## Narcissa's Executors *vs* Wathan *et al.*

CHANCERY.

ERROR TO THE NELSON CIRCUIT.

Case 75.

*Trustees.    Administrators and executors.    Rescission of contracts.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

April 13.

AUSTIN HUBBARD, who died in Bardstown in the year 1823, without legitimate issue, and possessed of an estate, real and personal, then estimated at about $13,000, devised the whole to a mulatto female slave of *Dr. Elliot,* named *Narcissa,* on condition that her freedom could be purchased on reasonable terms, otherwise to *Austin F. Hubbard.*

The case stated.

The will was offered for probate in July, 1823, but being contested by the testator's collateral heirs, was not admitted to record in the County Court until May, 1824. In the mean time, the estate was committed, by the probate court, to *Thomas Wathan,* who seems to have been one of those who contested the will.

The order admitting the will to record, having been brought to this Court, by appeal, was not finally disposed of until our Spring term, 1831, when it was affirmed.

*After* the affirmance, *Peter Sweets,* who had, as early as 1824, bought the contingent interest of *Austin F. Hubbard* for $100, and had attended to the preparation of the case in this Court on the side of the will, offered to buy *Narcissa with the avowed purpose of holding her as a slave;* but her master refusing to sell her except for the purpose of liberation, in fulfilment of the testator's intentions, the said *Sweets* and the curator *Wathan,* agreed with her and *Elliot,* that they would pay him $350 for emancipating her, if she would convey to them her entire interest in the testator's estate.    Accordingly, at the October County Court, 1831, *Elliot* acknowledged a deed of emancipation; and simultaneously or immediately afterwards, *Narcissa* signed a written relinquishment to *Sweets* and *Wathan,* of all her right to the property devised by *A. Hubbard.*

In the succeeding spring, *Sweets* filed a bill in chancery against Wathan, for a division of the spoil, charging that the personal estate was worth above $10,000, and the real estate and its profits, more than $5000.

*Narcissa,* who was made a defendant, made her answer a cross bill, in which she alledged that *Sweets* and *Wathan* had defrauded her, by concealing the value of the estate, and falsely representing that it was insolvent, or not worth more than about as much as would pay the $350 given by them to her master for her liberation; and therefore, she prayed for a rescission of the relinquishment thus fraudulently procured, and for a restitution of the estate to her as devisee.

*Sweets* denied the alledged fraud and fraudulent representations, and *Wathan* denied "*all fraud,*" but did not respond to the specific allegations.

The exhibits indicate that about $1400 of the personal estate remain, after paying all charges on that fund, and that the real estate is worth at least $1500; and the depositions prove that *Wathan* represented to *Elliot,* when negotiating in respect to *Narcissa,* that the estate was not worth more than the sum agreed to be given to him for emancipating her, and also prove that *Sweets* said to him that he *supposed* it might amount to as much as would indemnify him for his services and expenditures.

*Narcissa* died and devised her whole estate to trustees, with plenary power, and in trust for the *purchase* and emancipation of her children, born whilst she was a slave.

But, on final hearing, her cross bill, revived in the names of her trustees and executors, was dismissed; and that decree is now sought to be reversed.

It seems to us that the invalidity of the contract with *Narcissa,* cannot be reasonably doubted.

It is evident that *Sweets* was anxious to acquire the estate, and knew much about the extent and value of it. He had voluntarily connected himself with it, and assumed the relation of a *quasi* trustee for *Narcissa.* *Wathan* occupied, still more directly, a *fiducial* position, and must be presumed to have been well acquainted with the condition and value of the estate which had been in

his possession and under his management for more than seven years.

NARCISSA'S EX'S.
*vs*
WATHAN *et al.*

It was the equitable duty of both of them, therefore, and especially of Wathan, to disclose to Narcissa, frankly and explicitly, the situation of the estate and her potential interest in it. In such a purchase by a trustee, the law will even presume fraud, *prima facie.* And that presumption is not weakened but fortified by the extrinsic facts. The condition of Narcissa, the tacit admissions of Wathan, and the positive proof as to *Sweets,* will allow no room for a rational doubt that they made a fraudulent use of their peculiar knowledge and position, and unconscientiously deceived and imposed on an isolated victim, who had not the ordinary means of rescue or resistance.

Trustees and otherfiduciaries, when contracting with those who are interested in the fiducial fund, should be particularly frank and explicit in making known their interest; and a failure to do so will constitute a good ground for a rescission of a contract of purchase of them.

It was Wathan's duty, as the depository of the estate, to execute the testator's intentions in good faith, for Narcissa's benefit. And there can be no doubt that, had not he and *Sweets* paid to *Elliot* the $350, some other person would have done so, especially if Wathan had disclosed candidly, as it was his duty to do, the extent of the estate. Nor is there any ground for doubting that Narcissa would have been retained in slavery and Sweets would have enjoyed the estate, under the alternative devise to A. F. Hubbard, *could he have bought her as a slave from Elliot.*

This seems to us, therefore, a clear case for rescission. And all that Wathan can equitably claim, is a credit for his half of the $350 paid to Elliot.

The utmost amount to which Sweets could be entitled, would be a reimbursement of his expenditures in establishing the will; his repairs made in good faith on the real estate, and his half of the price paid to Elliot; and his estate is chargable with the reasonable value to him, of the use of that property since he obtained the possession thereof. It might be doubted whether he could reasonably demand a reimbursement of what he expended in helping to establish the will, because there is much cause to apprehend, that he made those expenditures for himself, as purchaser from A. F. Hubbard, and with the intention, (if the will should be established,) of keeping

Narcissa in slavery and thereby holding the whole estate for his own benefit.

But as his services have, in fact, benefitted Narcissa, we are disposed to allow him restitution out of the estate.

On the return of the case to the Circuit Court, an auditor should ascertain and settle the whole estate according to the principles of this opinion, and a final decree should, thereupon, be rendered accordingly, in favor of Narcissa's executors and trustees, and also, as between Sweets and Wathan, upon equitable principles as herein indicated.

Decree reversed and cause remanded.

*M' Henry* for plaintiffs; *Monroe* for defendants.